IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
OMAHA DIVISION

| | |
|---|---|
| RODOLFO A. QUILES<br><br>        Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, INCORPORATED; and Rodney N. Doerr, Edward Adelman, Tracy Scott, and Kathleen Hughes, individually,<br><br>        Defendants. | Case No.: 8:16-cv-330<br><br>COMPLAINT AND JURY DEMAND FOR VIOLATIONS OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT ("USERRA")<br><br>**THIS ACTION IS EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1).** |

COMES NOW the Plaintiff, Rodolfo A. Quiles, by and through his attorneys, the Law Office of J. Robert Black, Esq., and Law Office of Thomas G. Jarrard, PLLC, and alleges:

## I.    PARTIES

1. Plaintiff, RODOLFO A. QUILES (hereinafter "Mr. Quiles" or "Plaintiff") resided in the State of Nebraska and was an employee of UNION PACIFIC RAILROAD COMPANY, at all times pertinent hereto.

2. Defendant, UNION PACIFIC RAILROAD COMPANY, is a Delaware Corporation licensed to conduct business within the State of Nebraska as a Domesticated Foreign Corporation, with its principal office located at 1400 Douglas Street, Omaha, NE 68179, and its

1

registered agent identified as CT CORPORATION SYSTEM, 5601 South 59th St., Lincoln, NE 68516.

3. Defendant, RODNEY N. DOERR is the Chief Safety Officer of UNION PACIFIC RAILROAD COMPANY, and was a primary decision maker regarding Defendants' denial of Mr. Quiles' USERRA rights.

4. Defendant EDWARD ADELMAN is an employee and agent of UNION PACIFIC RAILROAD COMPANY, and was a primary decision maker regarding Defendants' denial of Mr. Quiles' USERRA rights.

5. Defendant KATHLEEN HUGHES is an employee and agent of UNION PACIFIC RAILROAD COMPANY, and was a primary decision maker regarding Defendants' denial of Mr. Quiles' USERRA rights.

6. Defendant TRACY SCOTT is an employee and agent of UNION PACIFIC RAILROAD COMPANY, and was a primary decision maker regarding Defendants' denial of Mr. Quiles' USERRA rights.

7. For the purposes of 38 U.S.C. §§ 4303(4) and 4323(c)(2) Defendant, UNION PACIFIC RAILROAD COMPANY, is a private employer operating within the State of Nebraska.

8. Each of the above individual Defendants exercised control over the employment benefits and opportunities of Mr. Quiles, was a primary decision maker regarding Defendants' violation of Mr. Quiles' rights, and for the purposes of 38 U.S.C. § 4303(4) is an employer.

## II. JURISDICTION AND VENUE

9. The Federal Court for the District of Nebraska has personal jurisdiction over the parties because they have sufficient contacts with this District.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the claims in this complaint arise out of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 et seq. (hereinafter "USERRA" or the "Act"), which confers subject matter jurisdiction on this Court pursuant to 38 U.S.C. § 4323(b)(3).

11. Venue is proper in the Federal Court for the District of Nebraska, under 38 U.S.C. § 4323(c) and 28 U.S.C. § 1391(b) because the acts and omissions in this complaint occurred in this District.

### III. FACTS

12. Mr. Quiles is a member of the United States Marine Corps Reserve.

13. All of Mr. Quiles' military discharge records reflect honorable military service.

14. The cumulative length of Mr. Quiles' absences from employment with the Defendants by reason of his service in the uniformed services does not exceed five years.

15. Mr. Quiles began working for Defendants in February 2014 in Omaha, Nebraska as the General Manager of Safety Analysis. Among the many responsibilities outlined in his job description, Mr. Quiles was tasked with advising and collaborating with the Executive Vice President of Operations (EVPO), Regional Vice Presidents (RVPs), the Chief Mechanical Officer (CMO), the Vice-President of Engineering (VP-Engineering) and the Vice-President of Safety (VP-Safety) on operating practices and safety issues and initiatives.

16. Prior to the time of his mobilization to active military duty service, Mr. Quiles reported directly to the Assistant Vice-President of Safety (AVP-Safety). Additionally, at the time of his military deployment, the Senior Manager of Safety Systems and Analysis and three subordinate analysts reported to Mr. Quiles. Mr. Quiles was a peer to the General Manager of Environmental Health and Safety; a peer to the General Manager of Safety; and a peer to the

General Director of Operating Practices. Mr. Quiles reported directly to the Assistant Vice President of Safety, Defendant Rodney Doerr.

17. On or around February 23, 2015, Mr. Quiles provided verbal notice to Mr. Doerr of a pending military deployment.

18. On or about March 18, 2015, Mr. Quiles provided written notice of the deployment to Union Pacific Railroad Company.

19. Mr. Quiles was mobilized for a military deployment on May 12, 2015.

20. In July 2015, Greg Workman became the new Chief Safety Officer. Mr. Workman had a prior working relationship with Defendant Edward Adelman.

21. While Mr. Quiles was still serving his military deployment, Mr. Workman and Mr. Doerr arranged for Mr. Adelman to be moved from a field position in the Union Pacific Railroad Company into the position of General Director of Safety Analysis. Mr. Adelman replaced most, if not all of Mr. Quiles' duties and responsibilities. This move became effective September 1, 2015, during Mr. Quiles' deployment.

22. Mr. Quiles finished his military deployment on October 18, 2015 and reported back to work at Union Pacific Railroad Company on October 19, 2015. Upon his return, Mr. Quiles learned that he had been demoted from his pre-deployment status and seniority and that he was no longer the General Manager of Safety Analysis. Mr. Quiles' title and responsibilities were reduced. He was assigned the title of Director of Safety Analysis and his status was lowered both organizationally and functionally. Mr. Quiles had less direct responsibility for the strategic direction of analytics; less direct responsibility for budgeting; less direct responsibility for staffing; less direct interaction with analytics partners; less access to decision-makers and

Executives; and members of the Safety Analysis team no longer reported to him. Additionally, he no longer reported directly to the Assistant Vice President of Safety.

23. After Mr. Quiles return, Mr. Adelman (the General Director of Safety Analysis that had replaced most, if not all of Mr. Quiles' duties and responsibilities while Mr. Quiles was deployed) became Mr. Quiles' direct supervisor.

24. Mr. Quiles immediately complained to Mr. Doerr about his reemployment status under USERRA. Mr. Doerr directed Mr. Quiles to Ms. Kathleen Hughes, an attorney employed as a senior in-house counsel at Union Pacific Railroad Company, and Ms. Chastin Bailey, an employee in the Union Pacific Railroad Company Human Resources Customer Service Department.

25. After speaking with Mr. Doerr, Mr. Quiles immediately took his complaints to Ms. Bailey. Ms. Bailey told Mr. Quiles that the changes in his employment were not significant, and were not violations of USERRA. She also directed Mr. Quiles to Ms. Kathleen Hughes.

26. On October 23, 2015, Mr. Quiles sent an email to Ms. Hughes asserting his rights under USERRA. Ms. Hughes scheduled a follow up in-person meeting with Mr. Quiles for November 9, 2015. Ms. Hughes took notes during the meeting. Near the beginning of the meeting, Ms. Hughes asked Mr. Quiles if he wanted a "long career" at Union Pacific. Mr. Quiles responded that he did, to which Ms. Hughes responded: "Then maybe we don't have to talk about this and can skip this meeting." Mr. Quiles pressed the issue and continued to assert his rights under USERRA for the duration of their conversation.

27. After this conversation with Ms. Hughes and deliberate inaction by Mr. Doerr, Mr. Quiles attempted to move out of the Safety Analysis Department by contacting the person who originally hired him at Union Pacific Railroad Company, Mr. Richard Castagna, Regional Vice-

President of the Western Region. Mr. Castagna suggested Mr. Quiles interview for a field operating position under Mr. Castagna's operating region. Mr. Quiles successfully interviewed for the position. However when Mr. Castagna attempted to bring Mr. Quiles into this position under his current pay structure, to Mr. Castagna's surprise, he was blocked by the General Director of Human Resources Customer Service, Ms. Tracy Scott. Ms. Scott is Ms. Bailey's supervisor.

28. On or around November 13, 2015, Mr. Quiles received his Mid-Year Review, which was inaccessible to him during his deployment. In the written portion of the Review, Mr. Doerr directly referenced Mr. Quiles' military service and his absence in a negative light. Mr. Doerr's comments were critical of Mr. Quiles' absence due to military service and the impact of his absence on his job responsibilities.

29. On December 1, 2015, Mr. Quiles' position title was changed from Director to Senior Director. The change in title was only prophylactic, as it did not accompany any change in responsibilities, seniority or status commensurate with Mr. Quiles pre-deployment position.

30. On December 7, 2015, Mr. Quiles again attempted to transfer out of the Safety Analysis Department and he was scheduled to interview for the position of Union Pacific General Director of Network Development. When Mr. Quiles arrived to the glass door of the interview room, he saw Ms. Tracy Scott speaking very animated with the hiring panel. When Ms. Scott made eye contact with the approaching Mr. Quiles, she abruptly stopped speaking. Mr. Quiles withdrew from sight and returned a few minutes later. When he did, Ms. Scott was gone. Mr. Quiles completed the interview.

31. Mr. Quiles was denied the position. The reason given, lack of experience, was a pretext for denying Mr. Quiles the employment based upon unlawful reasons.

32. In December 2015, Mr. Adelman wrote the Plaintiff's Year End Review, in which Mr. Adelman ratified and endorsed Mr. Doerr's Mid-year Review negative military comments. Mr. Adelman also repeatedly cited Mr. Quiles' assertion of his USERRA rights to restored status and seniority as a negative aspect of Mr. Quiles' performance. Mr. Adelman gave the Plaintiff a rating of "4.0 – Below Expectations." This rating resulted in a significant reduction of a year-end bonus and stock award, as well as the loss of a pay raise. Defendants' claims of alleged non-discriminatory reasons for the ratings are a pretext created to avoid the truth and legal liability.

33. On December 18, 2015, Mr. Quiles filed a complaint with the Department of Labor, Veterans Employment Training Service, (DOL-VETS) alleging that Defendants violated USERRA by their failure to reemploy him in a position of like status and seniority, the negative references to his military service in the End of Year Review, the reduction of his bonus pay and stock interest by at least $40,000.00, the denial of a year end pay raise, and that defendants retaliated against him for asserting his rights under USERRA. The DOL began an investigation immediately.

34. On or about December 22, 2015, Union Pacific Railroad Company was made aware of Mr. Quiles' DOL /VETS complaint, and investigation, because the DOL investigator called its in-house attorney.

35. From December 22, 2015, through at least April 18, 2016, the DOL investigator communicated by phone and email with Ryan Wilkins, an in-house attorney at Union Pacific Railroad Company.

36. From December 2015 through at least April 18, 2016, the DOL investigator conducted interviews and received sworn statements from *inter alia*, Rod Doerr, Kathleen Hughes, Ed Adelman, Greg Workman, and Richard Castagna.

37. On January 11, 2016, the DOL investigator was contacted by Mr. Wilkins who requested that he be given an extension of time to prepare Defendants' responses to DOL.

38. On January 18, 2016, Mr. Adelman issued Mr. Quiles a letter of reprimand for declining an electronic calendar meeting invitation.

39. On February 1, 2016, Mr. Wilkins sent the DOL investigator a six-page statement responding to Mr. Quiles' USERRA complaints. Wherein, Mr. Wilkins states that Mr. Quiles was not discriminated against, or that his reemployment suffered at all, but rather his return from military service "***Improved*** his lot" (emphasis in original).

40. On March 2, 2016, Mr. Adelman placed Mr. Quiles on a "performance improvement plan" with a scheduled review date on May 2, 2016. Defendants' alleged reasons for placing Mr. Quiles in a performance improvement plan were a pretext. The performance improvement plan was a scheme designed to defeat Mr. Quiles' rights under USERRA.

41. Despite Defendants' scheme, Mr. Quiles made rapid positive progress on the performance improvement plan goals. As soon as that progress was evident, defendants abandoned the scheduled May 2, 2016 review date, and Mr. Quiles was summarily terminated from employment on March 29, 2016 --- less than a month into the alleged improvement plan. Defendants' claims for terminating Mr. Quiles employment based on alleged non-discriminatory reasons are a pretext created to avoid the truth and legal liability.

42. The DOL-VETS investigation concluded on April 22, 2016. The investigation determined all of Mr. Quiles' complaints had merit under USERRA. Defendants received notice of the investigative findings.

43. Four days later, on or around April 26, 2016, Mr. Quiles received notice from Union Pacific Railroad Company that his 2014 bonus stock award of 237 shares of Union Pacific Corporation was being forfeited because it had not vested prior to his termination.

44. At all times relevant hereto, Defendants maintained policies that prohibit unlawful retaliation and discrimination.

45. At all times relevant hereto, Defendants had a duty to act in compliance of the law of USERRA and ensure its agents follow the Act.

46. At all times relevant hereto, Defendant maintained a posted notice where employers customarily place notices for employees as required by 38 U.S.C. § 4334, informing managers and employees of rights under USERRA.

47. The named Defendants have all received managerial training by Union Pacific Railroad Company during the course of their employment.

48. At all times relevant hereto, Defendant had a duty to conduct itself in compliance with the law, including USERRA and ensure its managers and agents followed the Act.

49. The above-referenced actions by Defendant, and its agents, breached those duties.

50. Quiles suffered economic injury, as well as other harms and losses as a result of Defendant's discrimination and retaliation.

51. Defendant's actions are the direct and proximate cause of Quiles' damages.

52. As a result of Defendants' unlawful conduct in violation of USERRA, Mr. Quiles has suffered a loss of earnings and other benefits of employment in an amount to be proved at trial.

53. As a result of Defendants unlawful conduct in violation of USERRA and the necessity of this action to seek a remedy, Mr. Quiles fears further retaliation against his employment rights by Defendants or its managers, directors or employees. As such, the employment relationship that Mr. Quiles may have enjoyed with Defendants prior to the filing of this action is irreparably damaged through no fault of Mr. Quiles.

54. Defendants refuse to reinstate Mr. Quiles to the position of employment he would have enjoyed had Defendants not violated USERRA.

55. Upon information and belief, Defendants are a party to contracts with the United States which prohibit Defendants from discrimination against veterans and military service members and further evidence of its knowing and reckless disregard for the protections afforded a service member under USERRA.

56. To the extent that Defendants allege application of any agreement that constitutes any limitation on Plaintiff's rights under USERRA, it is illegal, null and void, inapplicable and of no force or effect pursuant to 38 U.S.C. § 4302.

## IV. CAUSES OF ACTION

57. Defendants violated Mr. Quiles' rights as guaranteed by USERRA, including, but not limited to: § 4311 discrimination and retaliation in employment; §§ 4312, 4313 reemployment rights; and § 4316, and 20 C.F.R. § 1002.247, rights and benefits of persons absent from employment for service in the armed forces.

### CAUSE OF ACTION NO. 1

### DISCRIMINATION IN VIOLATION OF 38 U.S.C. § 4311(a)

58. Defendants' actions violated Mr. Quiles' USERRA rights such that Mr. Quiles' obligation to perform service in the uniformed service was a motivating factor in decisions by Defendants which adversely affected Mr. Quiles' employment.

59. Defendants unlawfully discriminated against Mr. Quiles by, among other things, conducting negative performance evaluations, denial of bonus pay and stock interest, assignment to inferior employment position, denial of job opportunities elsewhere in the company, and denying Mr. Quiles employment and benefits of employment on the basis of his membership, service, or obligation to perform service in the uniformed service, a right provided by USERRA.

## CAUSE OF ACTION NO. 2

## DISCRIMINATION IN VIOLATION OF 38 U.S.C. § 4311(b)

60. Defendants unlawfully retaliated against Mr. Quiles' by conducting negative performance evaluations, denial of bonus pay and stock interest, assignment to inferior employment position, denial of job opportunities elsewhere in the company, placement on a false performance improvement plan and terminating Mr. Quiles' employment because he took action to enforce a protection afforded him under USERRA or to exercise a right provided by USERRA, such as voicing complaints to Defendants and contacting the Department of Labor.

## CAUSE OF ACTION NO. 3

## VIOLATION OF 38 U.S.C. §§ 4312 & 4313

61. Defendants' actions violated 38 U.S.C. §§ 4312 and 4313 by, among other things, failing to promptly reemploy Mr. Quiles either in the position of employment in which he would have been employed if his continuous employment with Defendant had not been

11

interrupted by his military service, or a position of like seniority, status and pay, the duties of which Mr. Quiles was qualified to perform.

## CAUSE OF ACTION NO. 4

## VIOLATION OF 38 U.S.C. § 4316

62. Defendants violated 38 U.S.C. § 4316 by, among other things, denying Mr. Quiles the rights and benefits determined by seniority and such other rights and benefits not determined by seniority Mr. Quiles would have attained if he had remained continuously employed.

63. Defendants violated 38 U.S.C. § 4316(c)2 by, among other things, terminating Mr. Quiles' employment, without cause, within the protection period provided in the Act.

## CAUSE OF ACTION NO. 5

## VIOLATION OF 38 U.S.C. § 4316(b) (1) & 38 U.S.C. § 4318

64. USERRA, § 4316(b), provides, in part:

> (b)(1) Subject to paragraphs (2) through (6), a person who is absent from a position of employment by reason of service in the uniformed services shall be--
>
> (A) deemed to be on furlough or leave of absence while performing such service; and
>
> (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

65. The USERRA, § 4318 requires an employer to provide its employees certain pension benefits upon the completion of military service.

66. Upon information and belief, Defendants failed to provide the rights and benefits to which Mr. Quiles was entitled under §§4316 and 4318 by, *inter alia,* failing to properly restore

12

Mr. Quiles full employment status with full benefits, and failing to contribute to Mr. Quiles' pension/benefit accounts following Mr. Quiles' return from military orders.

## CAUSE OF ACTION NO. 6

## WILLFUL VIOLATIONS – 38 U.S.C. § 4323

67. Defendants' conduct was willful as defined by 38 U.S.C. § 4323(d), 20 C.F.R. § 1002.312(c), because Defendants were on notice of their obligations under the Act from its then existing federal contractor obligations and requirements, internal policies, federal law, posted notices, as well multiple direct notices to Defendants from both Mr. Quiles and the DOL that their actions violated USERRA. Defendants showed reckless disregard for these matters, including internal complaints made directly to supervisors and corporate legal counsel.

## V.   PRAYER FOR RELIEF

68. Under USERRA, a court may order equitable remedies, including reinstatement and recoupment of any loss of wages or benefits. § 4323(d)(1)(A, B). USERRA also empowers a court to use "its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits" of the service member. § 4323(e). A court may award the prevailing party reasonable attorneys' fees, expert witness fees, and other litigation expenses. § 4323(h)(2).

69. Mr. Quiles respectfully demands a jury trial and further to be awarded compensation for all injury and damage suffered. To wit:

   a. Economic and non-economic damages in the amount to be proven at trial including: back pay for a reduced end of year raise at the end of 2015, back pay for the loss of bonus stock at the end of 2015, back pay for reduced bonus cash at the end of 2015, back pay for the loss of bonus stock awarded at the end of 2014,

    back pay for lost wages, lost benefits of employment including lost retirement contributions following Mr. Quiles' termination in March 2016, to the date of trial and negative tax consequences of any award;

    b.    Front pay in lieu of reinstatement;

    c.    Order Defendants to pay prejudgment interest on the amount of wages and lost benefits found due;

    d.    Order Defendants to pay liquidated damages in the amount of lost wages and value of benefits pursuant to 38 U.S.C. § 4323(d)(1)(C); and

    e.    Reasonable attorney and expert fees, and costs, pursuant to 38 U.S.C. § 4323 and as otherwise provided by law

70.    Mr. Quiles also respectfully requests the court take the following actions:

    a.    Declare that Defendants' negative performance evaluations, denial of bonus pay and stock interest, assignment to inferior employment position, denial of job opportunities elsewhere in the company, and denying Mr. Quiles employment and benefits of employment, in part because of his military service, was unlawful and violated USERRA, 38 U.S.C. § 4311(a);

    b.    Declare that Defendants' decision to terminate Plaintiff, in part because Mr. Quiles took action to enforce protections afforded to him under USERRA, is a retaliatory action in violation of USERRA, 38 U.S.C. § 4311(b);

    c.    Declare that Defendants' failure to properly reemploy Plaintiff to a positon of employment he would have enjoyed but for his absence due to military service, was unlawful and violated USERRA, 38 U.S.C. §§ 4312 and 4312 ;

d. Declare that Defendants' failure to provide Mr. Quiles with the rights and benefits Mr. Quiles would have attained if he had remained continuously employed was unlawful and violated USERRA 38 U.S.C. § 4316.

e. Declare that Defendants' violations of USERRA were willful pursuant to 38 U.S.C. § 4323(d)(1)(C);

f. Direct Defendants to remove and destroy and adverse employment record that is in Defendants' possession or control and related to Mr. Quiles;

g. Reinstate Plaintiff to the position of employment with Defendants—the position to which he would have been reemployed had Defendants not violated USERRA;

h. Order Defendants to pay Mr. Quiles reasonable attorneys' fees, expert witness fees, and other litigation expenses pursuant to § 4323(h)(2).

i. Order such other relief as may be just and proper.

Respectfully submitted this July 7, 2016.

*s/ J. Robert Black*
NE Bar # 23378
Law Office of J. Robert Black, Esq.
3906 Raynor Parkway, Suite 105
Bellevue, NE 68123
Telephone: (402) 965-1457
Email: rob@jrobertblacklaw.com

*s/ Thomas G. Jarrard*
WSBA # 39774
Law Office of Thomas G. Jarrard, PLLC
1020 North Washington Street
Spokane, WA 99203
Telephone: 425-239-7290
Email: TJarrard@att.net

Attorneys for Plaintiff