IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RODOLFO A. QUILES,

    Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,
INCORPORATED, RODNEY N. DOERR,
EDWARD ADELMAN, TRACY SCOTT,
and KATHLEEN HUGHES, individually;

    Defendants.

8:16CV330

MEMORANDUM AND ORDER

This matter is before the court on plaintiff's motion for partial summary judgment, Filing No. 38, plaintiff's motion to strike defendants' reply brief, Filing No. 39, and defendants' amended motion to stay and compel arbitration, Filing No. 43. This action arises out of plaintiff's termination by Union Pacific (hereinafter "UP") in violation of 38 U.S.C. §§ 4312, and 4313 and 4316; and 20 C.F.R. § 1002 *et seq.* (Uniform Services Employment and Reemployment Rights Act, hereinafter "USERRA"). Plaintiff contends Union Pacific terminated him for unlawful reasons, namely (1) his required military service, and (2) in retaliation for filing a complaint with the Department of Labor. Defendants contend that the plaintiff is required to arbitrate these issues.

### BACKGROUND

Union Pacific hired plaintiff in February, 2014, as a General Manager of Safety Analysis. Plaintiff is a member of the United States Marine Corps Reserve. The military deployed plaintiff on or about May 12, 2015. While deployed, Greg Workman was hired by UP and assumed most of plaintiff's job responsibilities. Plaintiff returned to work on

October 19, 2015. He learned he had been demoted. He complained and said this demotion violated USERRA. He conferred with management, the human resources department, and with legal counsel for UP. He thereafter asserted his rights under USERRA.

Plaintiff tried to transfer into another department. He successfully interviewed for the position, but the Director of Human Resources blocked his transfer. In November, 2015, plaintiff received a mid-year review. In his written review his military service absence was referenced in a negative manner. In December 2015 plaintiff received another review, again containing negative military comments. He received a below expectations rating. This allegedly cost him approximately $40,000.00 in denial of a year-end pay raise and bonus pay and stock interest. On December 18, 2015, plaintiff filed a complaint of discrimination and violation of USERRA with the Department of Labor Veterans Employment Training Service. During the investigation, plaintiff received a letter of reprimand for refusing to attend a calendar meeting invitation. On March 2, 2106, defendants placed plaintiff on a performance review plan. Plaintiff says he immediately made the changes, so the follow up date of May 2, 2016, was canceled. However, on March 29, 2016, his employment was terminated. The Department of Labor investigation concluded on April 22, 2016, and the findings indicated plaintiff's claims had merit. Four days later, on or around April 26, 2016, Mr. Quiles received notice from Union Pacific Railroad Company that his 2014 bonus stock award of 237 shares of Union Pacific Corporation was being forfeited because it had not vested prior to his termination.

**STANDARD OF REVIEW**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e)(2); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show there is sufficient evidence to support a jury verdict in his or her favor. *Id.* "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

3

the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Although we view the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.,* 167 F.3d 398, 401 (8th Cir. 1999). "In ruling on a motion for summary judgment a court must not weigh evidence or make credibility determinations." *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

**DISCUSSION**

USERRA, § 4316(b), provides, in part:

> (b)(1) Subject to paragraphs (2) through (6), a person who is absent from a position of employment by reason of service in the uniformed services shall be--
> (A) deemed to be on furlough or leave of absence while performing such service; and
> (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316.

    *a. Required Arbitration*?

At issue in this motion is whether plaintiff is required to arbitrate his claims in this case.[1] Plaintiff first contends, and the defendants agree, there is no valid written and

---

[1] The arbitration clause of the agreement states:

**ARBITRATION**
The Participant agrees and the Company agrees that any controversy, claim, or dispute arising out of or relating to this Agreement or the breach of any of these terms and conditions, or arising out of or relating to his or her employment relationship with the Company or any of its affiliates, or the termination of such relationship, shall be resolved by binding arbitration before a neutral arbitrator under the rules set forth in the Federal Arbitration Act, except for claims by the Company relating to his or her breach of any of the employee covenants set forth in Paragraphs 5, 6, 7, 8 or 10 above. By way of example only, claims subject to this agreement to arbitrate include claims litigated under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the Civil Rights Act of 1994, the Americans with Disabilities Act, the law of contract and the law of tort. The Participant and the Company agree that such claims may be brought in an appropriate administrative forum, but at the point at which the Participant or the Company seek a judicial forum to resolve the matter, this agreement for binding arbitration becomes effective, and the Participant and the Company hereby knowingly and voluntarily waive any right to have any such dispute tried and adjudicated by a judge or jury. The foregoing not to the contrary, the Company may seek to enforce the employee covenants set forth in Paragraphs 5, 6, 7, 8 or 10 above, in any court of competent jurisdiction. This agreement to arbitrate shall continue in full force and effect despite the expiration or termination of these Standard Terms and Conditions or the Participant's employment relationship with the Company or any of its affiliates. The Participant and the Company agree that any award rendered by the arbitrator shall be final and binding and that judgment upon the final award may be entered in any court having jurisdiction thereof. The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the Participant, the Company or any of its affiliates had the mater [sic] been heard in court. All expenses of the arbitration, including the required travel and other expenses of the arbitrator and any witnesses, and the costs relating to any proof produced at the direction of the arbitrator, shall be borne equally by the Participant and the Company unless otherwise mutually agreed or unless the arbitrator directs otherwise

signed agreement to arbitrate in this case. Plaintiff argues, and defendants agree, plaintiff was never provided with a physical copy of an arbitration agreement. As stated by the plaintiff:

> In February 2015, Mr. Quiles also received an electronic 2014 Compensation Statement. Quiles Decl. ¶ 4; Jarrard Decl. ¶¶ 12, 14, citing Winkler Deposition, Exhibit I at pages 31 - 34. This document notified Mr. Quiles that he had achieved a merit increase in base pay for 2015, a cash bonus, and an equity award of stock. Exhibit 4. The document instructed Mr. Quiles to click on a link to establish an account under E-Trade (a financial services company). Mr. Quiles clicked the link in the letter and established the E-Trade account for the stock. Quiles Decl. ¶ 4.

Filing No. 40, ¶ 7, at 2. The award was for good performance. Plaintiff did not receive an arbitration agreement related to any of these increases. He was terminated on March 29, 2016, and he then received a notice that his 2015 bonus stock award of 237 shares of Union Pacific was forfeited, as it did not vest prior to his termination. Plaintiff then filed this Complaint. Defendants moved to stay and to compel arbitration. However, plaintiff points out that there are no documents in the evidence that show he ever received a copy of the arbitration agreement in question.

Ms. Heather Frederick, Manager for Equity Compensation, testified at her deposition as follows:

> Q. Okay. Do you have -- have you seen any records today to show you that he accessed that document?
> A. No.
> Filing No. 41-8,Fredrick Depo at 73 line 3 through line 10.

---

in the award. The arbitrator's compensation shall be borne equally by the Participant and the Company unless otherwise mutually agreed or unless the law provides otherwise.
Filing No. 13-2. ¶ 13 at 7.

Ms. Fredrick further testified that there are no records to show that Mr. Quiles ever accepted any arbitration agreement; or was ever sent a copy of the agreement. SOF ¶ 24, citing Filing No. 41-8, Fredrick Depo. at 82, lines 1 through 10; Frederick Depo at 93, lines 12 through 23. She also stated:

> Q. Did that system show you that Mr. Quiles had accepted that stock agreement?
> A. No.
> Q. Okay. Did that system show you that Mr. Quiles had been presented with that stock agreement?
> A. No.
> Q. Did it show you that he had viewed that stock agreement?
> A. No.

SOF ¶ 24, Filing NO. 41-8, Frederick Depo. at 82, lines 1 through 10.

> Q. Okay. So you don't ever have to even see the stock grant award in order to accept it; is that right?
> A. Correct.

Filing No. 41-8, Frederick at 86, lines 17-20.
> Q. […] -- based on what I've heard you just say, is it true you're not required to accept the agreement in order to set up your E*Trade account; is that right?
> A. Correct.

Filing No. 41-8, Frederick at 88, lines 20-24.
> Q. Does the system require you to read the stock agreement in order to activate your stock award?
> A. No.

Filing No. 41-8, Frederick at 89, lines 5-8.
> Q. When an employee is in their E*Trade account, is there any other place, besides the E*Trade account, where they would be able to see a copy of that stock award agreement we've been talking about?
> A. No.
> Q. Okay. Does it get mailed to them separately?
> A. No.
> Q. Does E*Trade send it in the United States mail to them after they've activated their account?
> A. No.

SOF ¶ 24, citing Filing No. 41-8, Frederick Depo. at 93, lines 12–23.

Defendants contend that plaintiff agreed to submit to arbitration any claims arising from or relating to his employment with UP. Defendants state an arbitration

agreement was formed when plaintiff accepted the 2015 stock award.  Defendants contend that the arbitration agreement accompanied the stock award, that plaintiff did not object to it, and therefore the parties are bound by it.  Defendants argue the arbitration agreement was sent electronically in some form on the page of the stock award.  Defendants also contend that the arbitration provision does not limit plaintiff's substantive rights under USERRA.

Defendants contend that plaintiff would not have received the Retention Shares under the Stock Agreement unless he agreed to the terms of the Stock Agreement.  The Stock Agreement gives an employee 30 days upon receiving the notice to object in writing or the employee is deemed to have accepted its terms.  Filing No. 13-2, ¶ 4, at 3. The Stock Agreement includes an arbitration clause that requires the recipient of the Retention Shares to resolve any controversy, claim, or dispute arising out of or relating to his employment relationship with Union Pacific by binding arbitration under the rules set forth in the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16 (1994).  The Agreement also tells one to click to receive your equity award.  The Stock Agreement provides that Union Pacific granted Quiles 237 Retention Shares "upon the terms and subject to the conditions set forth in this Grant Notice, the Union Pacific Corporation 2013 Stock Incentive Plan (the "Plan") and the Standard Terms and Conditions (the "Standard Terms and Conditions") adopted under such Plan and provided to Participant, each as amended from time to time."  Filing No. 13-2, at 1.  Defendants also argue that

8

a nonsignatory can be bound by the signatory to an arbitration agreement, relying on *Bank of America ("BOA")., N.A. v. UMB Fin. Servs.,* 618 F.3d 906, 914 (8th Cir. 2010).[2]

Plaintiff notes that the burden on proving the existence of a contract falls on the proponent. *Kercher v. Board of Regents of the Univ. of Nebraska,* 290 Neb. 428, 436 (2015). "To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." *City of Scottsbluff v. Waste Connections of Nebraska, Inc.,* 282 Neb. 848, 861 (2011). Plaintiff contends there was no offer and acceptance of any arbitration agreement.

A party who has not agreed to arbitrate cannot be forced to do so. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). The party attempting to enforce the agreement must show that a valid arbitration exists and that the dispute falls within the scope of the agreement. *See Lyster v. Ryan's Family Steak Houses, Inc.,* 239 F.3d 943, 945 (8th Cir. 2001) (citing cases). [W]hether the parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002). The Supreme Court noted the arbitrability

---

[2] In Bank of America, the Court stated:
"[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants. . . . The Supreme Court has ruled that state contract law governs the ability of nonsignatories to enforce arbitration provisions." *Donaldson Co., Inc. v. Burroughs Diesel, Inc.,* 581 F.3d 726, 731-32 (8th Cir. 2009) (internal quotes omitted). "[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, thirty-party beneficiary theories, waiver and estoppel[.]"
*Id.* at 912

9

determination depends on whether the parties "agree[d] to submit the arbitrability question itself to arbitration." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995). "[W]hen courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Kaplan,* 514 U.S. at 944 (alterations in original) (citing *AT & T Techs., Inc. v. Comm's Workers of Am.,* 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs.,* 475 U.S. at 649.

The court agrees with the plaintiff. As pointed out by the plaintiff, he never saw an arbitration agreement. The evidence shows plaintiff did not access the grant agreement as of October 26, 2016, and thus he did not ever accept the arbitration agreement. Plaintiff received the stock award with no requirement that he agree to arbitration. Further, and the court agrees, plaintiff contends that he only wishes to be placed in the same situation as existed prior to his termination. Plaintiff argues that a performance bonus could not transform his employment status into one of a contract. That includes his stock award. He argues he does not need any benefit from the arbitration agreement. He is seeking damages for wrongful termination including lost wages. These are remedies, he argues, and not a cause of action underlying the arbitration agreement.

The court agrees and finds plaintiff is not required to arbitrate under any of the many theories proposed by defendants. The court agrees that there are no facts to

support a claim that plaintiff agreed to arbitrate. The court finds there is no valid, binding agreement to arbitrate as a matter of law. The issues in this case involve termination and possible compensation of the plaintiff. There is no evidence that plaintiff agreed to an arbitration contract. Under the facts in this case, plaintiff is not required to arbitrate his re-employment claim. Plaintiff has the right to sue under USERRA. To the extent this arbitration clause attempts to abrogate this right, it is void.

### b. Unconscionable Agreement

The court also agrees, in the alternative, that this agreement, even if a contract, is unconscionable. The agreement, if any, is governed by Utah law. Under Utah law, "'Unconscionable' is a term that defies precise definition. Rather, a court must assess the circumstances of each particular case in light of the twofold purpose of the doctrine, prevention of oppression and of unfair surprise." *Resource Management Company v. Weston Ranch and Livestock Company,* 706 P. 2d 1028, 1041 (Utah 1985). "'Substantive unconscionability' examines the relative fairness of the obligations assumed." *Id.* "[It] is indicated by contract terms so one-sided as to oppress or unfairly surprise an innocent party." *Id.* "'Procedural unconscionability' focuses on the manner in which the contract was negotiated and the circumstances of the parties." *Id.* It would shock the conscience if receiving a bonus for performance forces one to arbitrate without prior knowledge or agreement. Bonuses are generally part of the salary of the employee. There is no evidence that can be construed as a voluntary meeting of the minds here. Further, it is unconscionable as it would require the plaintiff to arbitrate his claims in Utah. *See In Hollins v. Debt Relief of America,* 479 F. Supp. 2d 1099 (D. Neb. 2007) (this Court struck down a requirement that made a Nebraska debtor go to Texas

11

to arbitrate as unconscionable). The court also notes that the Eighth Circuit construes USERRA "broadly and in favor of its military beneficiaries." *Dorris v. TXD Servs., LP,* 753 F.3d 740, 745 (8th Cir. 2014).

### *c. Costs of Arbitration*

There are also numerous costs associated with arbitration in this case. UP has offered to pay for some of them. However, the Utah travel and lodging costs would be borne by the plaintiff. In a similar USERRA discrimination case, the court held that the plaintiffs "demonstrated that the cost-splitting provision in defendants' Arbitration Policy is likely to prevent them from vindicating their statutory rights by effectively barring them from the only forum available under the policy." *Birabent v. Hudiburg Auto Group, Inc.,* 2012 WL 1438921 (W.D. Okla. Jan. 5, 2012).

Further, UP's arbitration agreement fails to mention USERRA. Section 4334 of USERRA requires an employer to "provide to persons entitled to rights and benefits under [USERRA] a notice of rights, benefits and obligations of such persons and such employers under [USERRA]." Such waivers must be in writing. *See* 38 U.S.C. § 4316(b)(2)(A)(ii). The burden is on UP to show written notice and prove the employee knew of the specific rights he would lose. 38 U.S.C. § 4316 (b)(2)(B). *See Breletic v. CACI, Inc.*, 413 F. Supp. 2d. 1329 (N.D. Ga. 2006) (arbitration agreement was not enforceable because it did not constitute a clear waiver of the employee's right to bring his claims in a judicial forum under the USERRA). There was no knowing or voluntary agreement or waiver in this case.

THEREFORE, IT IS ORDERED THAT:

1. Plaintiff's motion for partial summary judgment, Filing No. 38, is granted;

2. Defendants' motion to compel arbitration and stay, Filing No. 43, is denied;

3. Plaintiff's motion to strike the reply brief, Filing No. 39, is denied as moot.

Dated this 28th day of April, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge